## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Demetreus Anthony McGinnis,                     Case No. 19-cv-2376 (NEB/TNL)

      Petitioner,

v.                                              **REPORT &**
                                                **RECOMMENDATION**

Vicki Jansen,

      Respondent.

Demetreus Anthony McGinnis, OID #229562, MCF – Moose Lake, 1000 Lakeshore Drive, Moose Lake, MN 55767 (pro se Petitioner); and

Michael J. Lieberg, Chief Deputy County Attorney, Stearns County Attorney's Office, Administration Center, Room 448, 705 Courthouse Square, St. Cloud, MN 56303-4701 (for Respondent).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Demetreus Anthony McGinnis's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"), ECF No. 1; Request for an Evidentiary Hearing with His Suggestions in Support, ECF No. 12; Motion to Expand the Record Under Rule 7 of the Rules Governing § 2254 Cases, ECF No. 17; and Motion to Introduce Trial Transcripts into the District Court's Record, ECF No. 18. Petitioner is proceeding pro se. Respondent Vicki Jansen is represented by Chief Deputy County Attorney Michael J. Lieberg.

This action has been referred to the undersigned magistrate judge for a report and recommendation to the Honorable Nancy E. Brasel, United States District Judge for the District of Minnesota, pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that the Petition be denied; the motion/request for an evidentiary hearing be denied; the motion to expand the record be denied as moot; the motion to introduce trial transcripts be granted; and this action be dismissed with prejudice.

## II. BACKGROUND

### A. Criminal Proceedings

Following an incident in March 2014 in which the decedent was shot and killed, Petitioner gave a statement to police roughly two hours after the shooting.  *McGinnis v. State*, No. A17-1674, 2018 WL 3097169, at *1 (Minn. Ct. App. June 25, 2018) [hereinafter *McGinnis II*].

> In the statement, [Petitioner] told police that he met with two guys in a car to sell them something.  One of the guys got into [Petitioner's] car, handed [Petitioner] fake money, and then started to leave the car.  When [Petitioner] grabbed the guy's arm, the guy turned around, hit [Petitioner] in the face, and started running.  [Petitioner] chased him, and the guy pulled out a gun before hitting [Petitioner] some more.  The two wrestled, and the second guy joined the fray; both guys were kicking and kneeing [Petitioner].  The gun went off twice, and after it went off the second time, one of the guys said "somethin' like oh, s--t."  Then he grabbed the gun, which was lying on the ground, pointed it at [Petitioner], and the gun just clicked.  After that, the two guys drove away.  During the police interview, [Petitioner] said, "I know that he got hit." When [Petitioner] told the officer who was taking his statement that he did not want to talk anymore, the officer stopped asking questions about the shooting incident.

*Id.*

2

Petitioner proceeded to a jury trial. At trial, witnesses testified that this was a drug transaction gone bad and Petitioner became upset after he was paid with counterfeit money. *State v. McGinnis*, No. A15-1043, 2016 WL 3659127, at *1 (Minn. Ct. App. July 11, 2016) [hereinafter *McGinnis I*]. Witnesses testified that Petitioner pointed a gun at the decedent, a struggle ensued, and the decedent was shot. *Id.*

The jury both heard and received a transcript of a redacted version of Petitioner's statement to police. *McGinnis II*, 2018 WL 3097169, at *1; Resp. at 5, ECF No. 5; *see* Redacted Stmt., Resp't's App. Ex. 15, ECF No. 6-3 at 101-09.[1] "The parties stipulated to redactions of parts of the statement, including [Petitioner's] invocation of his right to remain silent. Statements that [Petitioner] made before invoking his right to silence were included in the statement admitted into evidence." *McGinnis II*, 2018 WL 3097169, at *1; *compare* Redacted Stmt. *with* Unredacted Stmt., Resp't's App. Ex. 14, ECF No. 6-3 at 110-20.[2] During his statement, Petitioner told the police:

> We got into it, he hit me some more, yeah he pulled the gun first before he started hitting me. I—it was right next to me. I had to try to grab him. We were wrestling. They were both jumpin' on me and kickin' me kneeing me and well, the gun went off twice, and then I don't know exactly when, but I know the second time it was when he was on top of me, and he said somethin' like oh, shit, and then it—it was on the ground, and he grabbed it, and he pointed it at me. I'm layin' there, and he pointed it at me. It just clicked though. It just—and so now I'm mad and I'm yelling at him and going after the car, and fuck you—fuck you.

---

[1] Petitioner also attached a copy of the redacted statement to the Petition as "Attachment 'C.'" ECF No. 1-1 at 26-34.

[2] Petitioner also attached the unredacted portion of the statement to the Petition as "Attachment 'D.'" ECF No. 1-1 at 35-37.

Redacted Stmt. at 3.

After talking with police some more, the following exchange occurred:

Q: Okay. Did you—

A: Listen, I don't—I don't—I don't—I don't—I don't want to do the specific questions. This is what happened, and I know that I'm gonna go, I mean, in fuckin' jail, so I—I'll figure it out, but (indiscernible) I'm just—I just want to be done.

Q: Relax—relax.

A: I just want to be done. I want to call—

Q: —You're tellin' me the stuff that—that you have got to get straightened out, because—

A:—I told—I told you every [sic] I can—

Q: —Did you—okay, let me ask you this—

A: —I don't want to talk anymore.

Q: Let me ask you—

A: —I'm sorry—

Q:—You don't have to talk—

A: —Here's the main—here's the main part—here's the main part. I'm sorry. I should—I—I didn't do the right thing, and I know I didn't, and whatever happens—happens. I'm done.

Q: I'm gonna say a few things. You listen. You don't have to talk, okay?

A: Okay.

Redacted Stmt. at 7-8.

A little while later, Petitioner stated:

4

> I don't always do the right thing, but I'm—eventually I got a surgery, and I couldn't work construction anymore until I got a job at [employer], work every day I get full-time job, and now my life is over again. I hurt somebody—I hurt somebody, and that's all I have to say. I just, it's just not my family I hurt. My kid is now hurt, I hurt my baby, I hurt my girlfriend is pregnant. I fucked up my whole life. All they do is tell me how proud they are. That's all I have to say.

Redacted Stmt. at 9.

At trial, Petitioner

> testified that he attempted to sell two cell phones to [the decedent] on March 13, and that [the decedent] paid with counterfeit money. When [Petitioner] noticed that the money was fake, [the decedent] grabbed the money and punched him. [Petitioner] testified that he chased [the decedent], and [the decedent] pointed a gun at him. [Petitioner] testified that he shot [the decedent] once as the two wrestled over the gun.

*McGinnis I*, 2016 WL 3659127, at *2.

Petitioner was "found . . . guilty of second-degree unintentional felony murder, third-degree murder, and witness tampering." *McGinnis II*, 2018 WL 3097169, at *1; *see also McGinnis I*, 2016 WL 3659127, at *2. Petitioner was sentenced to 210 months in prison. *McGinnis II*, 2018 WL 3097169, at *1.

## B. Direct Appeal

Petitioner appealed to the Minnesota Court of Appeals, for which he retained new counsel. On direct appeal, appellate counsel argued (1) the "conviction for second-degree unintentional felony murder and acquittal for felon in possession of a firearm are legally and logically inconsistent" verdicts; (2) the evidence was insufficient to support third-degree unintentional murder and third-degree witness tampering; (3) the superseding-cause

instruction was erroneous; (4) an accomplice-corroboration instruction should have been given; (5) prosecutorial misconduct; and (6) ineffective assistance of trial counsel. *See McGinnis I*, 2016 WL 3659127, at *2-10.

With respect to prosecutorial misconduct, appellate counsel argued the prosecutor committed misconduct by stating "during voir dire . . . that a drug deal occurred on March 13"; "elicit[ing] testimony from [a witness], knowing that [the witness] would assert his Fifth-Amendment privilege against self-incrimination"; stating during his closing argument that he did not think Petitioner was telling the truth, comparing Petitioner's testimony to an Oscar performance, and misstating the evidence; "using the word 'we' while examining witnesses"; making comments intending to inflame the jury's passions and prejudices against Petitioner by "referencing the need to spend tax dollars" and "elicit[ing] testimony that [Petitioner] possessed an EBT and credit card that belonged to someone else"; and implying Petitioner "had a duty to present evidence." *Id.* at *6-9.

As for ineffective assistance of trial counsel, appellate counsel argued that Petitioner "received ineffective assistance of counsel because his [trial] attorney failed to request an accomplice-corroboration instruction, object to the state's 'overwhelming' use of leading questions, and object to numerous instances of alleged prosecutorial misconduct." *Id.* at *10.

The Minnesota Court of Appeals affirmed Petitioner's convictions. *Id.* at *1, 10.

### C. Postconviction Proceedings

#### 1. First Petition for Postconviction Relief

Petitioner filed a petition for postconviction relief with the state district court, raising multiple grounds for relief.  *See McGinnis II*, 2018 WL 3097169, at *1; *see also generally* Pet. for Post-Conviction Relief & Mem. in Supp., Resp't's App. Ex. 10, ECF No. 6-3 at 2-75 [hereinafter Postconviction Mem. I].  In relevant part, Petitioner argued he received ineffective assistance from both trial and appellate counsel in connection with the prosecution's use of his post-arrest silence as substantive evidence and for impeachment purposes in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  *See, e.g.*, Postconviction Mem. I at 2-14, 35-38.  As part of these arguments, Petitioner asserted that his appellate counsel was ineffective because counsel was not able to obtain Petitioner's complete file from trial counsel and therefore did not have access to the redacted and unredacted versions of his statement upon which these constitutional arguments were based.  *See, e.g.*, Postconviction Mem. I at 3, 46-47.

Petitioner also filed two motions to amend his petition for postconviction relief.  Motion to Amend I, Resp't's App. Ex. 11, ECF No. 6-3 at 76-80; Motion to Amend II, Resp't's App. Ex. 12, ECF No. 6-3 at 83-87.  In the second motion to amend, Petitioner argued that "trial counsel was ineffective because [counsel] failed to file a pre-trial motion to suppress part of [his] statement made to police after the police ignored [his] unambiguous and unequivocal invocation of silence."  Motion to Amend II at 2; *see also* Motion to Amend II at 4.  Petitioner also argued that trial counsel was ineffective because counsel failed to object to the use of his statement, and "magnified his ineffectiveness by

7

being complicit in the State hiding this issue from the trial court by agreeing to enter into the record a redacted version of Petitioner's statement."  Motion to Amend II at 2; *see also* Motion to Amend II at 4.

### a.  Denial of Petition

The state district court denied Petitioner's petition for postconviction relief without expressly addressing the motions to amend.  *See generally* Findings of Fact, Conclusions of Law & Order, Resp't's App. Ex. 13, ECF No. 6-3 at 88-100 [hereinafter Postconviction Order I]; *see also McGinnis II*, 2018 WL 3097169, at *2 (state district court did not "specifically grant[] McGinnis's motions to amend").

The state district court held that Petitioner's "claim[] that the prosecution committed misconduct by using his post-arrest silence as substantive evidence of his guilt" was procedurally barred because it was "based upon information contained in the transcript of trial court proceeding[s]" and Petitioner either knew or should have known about the claim at the time of his direct appeal.  Postconviction Order I COL ¶ 6.  The state district court went on to consider, however, whether the claim had "substantive merit" for purposes of an exception to the procedural bar.  Postconviction Order I COL ¶ 7.  The state district reasoned:

> After a defendant invokes the right to remain silent, that silence may not be construed to mean anything more than an exercise of their [sic] Fifth Amendment rights.  *Doyle v. Ohio*, 426 U.S. 610, 617 (1976).  However, defendants who speak after receiving *Miranda* warnings are not induced to remain silent and may voluntarily waive the constitutional right to remain silent.  If a defendant voluntarily waives that right, the prosecution may fairly cross-examine the defendant regarding any inconsistent statements he previously made.  *Anderson v.*

> *Charles*, 447 U.S. 404, 408 (1980) (per curiam); *State v. Darveaux*, 318 N.W.2d 44, 49-50 (Minn. 1982).
>
> . . .
>
> During police questioning, [Petitioner], after receiving his *Miranda* warning, voluntarily relinquished his right to remain silent and gave a voluntary statement to the police about his version of events. Prior to trial, the parties stipulated to certain redactions from his statement to prevent the jury from learning that [Petitioner] invoked his right to remain silent by terminating the interview. Because the prosecution may fairly impeach a defendant based on inconsistent statements given during a voluntary waiver of the right to remain silent and no other evidence of [P]etitioner's invocation of that right was given to the jury, the prosecutor did not commit misconduct or violate [P]etitioner's right to due process by eliciting testimony and commenting on inconsistent or omitted details given in his trial testimony.

Postconviction Order I COL ¶¶ 5, 7.

With respect to Petitioner's claim that he received ineffective assistance of trial counsel based on counsel's "fail[ure] to object to the prosecution's unconstitutional use of [his] silence as substantive evidence of . . . guilt when impeaching [P]etitioner's testimony at trial," the state district court held that this claim was based on trial strategy and therefore "not reviewable." Postconviction Order I COL ¶ 19. The state district court also held that this claim was procedurally barred because it could "be determined on the trial court record." Postconviction Order I COL ¶ 19. The state district court further stated: "As stated above, only a redacted version of [P]etitioner's statement to police was entered into evidence and the prosecution committed no misconduct by using his post-arrest silence to impeach him at trial." Postconviction Order I COL ¶ 19.

As for Petitioner's claim that he received ineffective assistance of appellate counsel, the state district court stated:

> Petitioner claims that his appellate counsel performed deficiently by failing to obtain [Petitioner's] entire file from his trial attorney and to argue prosecutorial misconduct, and there is a reasonable probability that but for this error the results of the appeal would have been different. As stated above, there is no substantive merit to [P]etitioner's new claims of prosecutorial misconduct. As [P]etitioner cannot show that the results of his appeal would have been different if his appellate counsel had obtained the entire file, his appellate counsel did not perform deficiently.

Postconviction Order I COL ¶ 34.

The state district court did not address the argument raised in Petitioner's second motion to amend that "trial counsel was ineffective because [counsel] failed to file a pretrial motion to suppress part of [his] statement made to police after the police ignored [his] unambiguous and unequivocal invocation of silence." Motion to Amend II at 2; *see* Resp. at 7 ("The district court did not directly address [Petitioner's] late-filed claim related to ineffective assistance of trial counsel for failing to seek suppression of his statement."). *But see McGinnis II*, 2018 WL 3097169, at *2 ("Without specifically granting McGinnis's motions to amend, the postconviction court addressed the *merits* of the proposed amendment motions . . . .") (emphasis added).

### b. Postconviction Appeal

Petitioner appealed the denial of postconviction relief to the Minnesota Court of Appeals. *See generally McGinnis II*, 2018 WL 3097169. Among other things, Petitioner challenged the state district court's decision with respect to the prosecutor's use of his post-

10

arrest silence as a violation of his Fifth Amendment rights; trial counsel's failure to object to such conduct by the prosecutor; and appellate counsel's failure to obtain his complete file and raise these issues on appeal. Postconviction App. Br. at 6-9, 10, 12, 14-26, Resp't's App. Ex. 5, ECF No. 6-2 at 2-53. Petitioner did not challenge the state district court's treatment of his motions to amend or raise specific arguments concerning trial counsel's failure to seek suppression of his statement. *See* Resp. at 7 ("[Petitioner] did not appear to directly raise ineffective assistance of trial counsel for failure to seek suppression of his statement.").

The Minnesota Court of Appeals held that, with the exception of the ineffective-assistance-of-appellate-counsel claim, the remainder of Petitioner's claims were "procedurally barred because [they were] based on events that occurred during [his] trial, and, therefore, [Petitioner] knew or should have known of the claims when he filed his direct appeal." *McGinnis II*, 2018 WL 3097169, at *2. As for the ineffective-assistance-of-appellate-counsel claim, the Minnesota Court of Appeals began with the premise that "'[t]he Sixth Amendment guarantees a defendant the effective assistance of counsel at critical stages of a criminal proceeding.'" *Id.* (quoting *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (quotation omitted)). And,

> [t]o establish ineffective assistance of appellate counsel, the petitioner bears the burden of showing both that counsel's performance was not objectively reasonable and, but for counsel's errors, the result of the proceeding would have been different. The petitioner must overcome the presumption that counsel's performance fell within a wide range of reasonable representation.

> *Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009) (quotation
> and citation omitted); *see also* Minn. Stat. § 590.04, subd. 1
> (2016) (stating that postconviction court is not required to hold
> an evidentiary hearing if "the files and records of the
> proceeding conclusively show that the petitioner is entitled to
> no relief").

*Id.* Noting that it was "not clear from the record why appellate counsel did not obtain the entire file from trial counsel," the Minnesota Court of Appeals held that, "even if we assume that appellate counsel's performance was deficient, we agree with the postconviction court that [Petitioner] is not entitled to relief because he failed to show that the results of his appeal would have been different if appellate counsel had obtained the entire file." *Id.* at *3.

The Minnesota Court of Appeals began with the United States Supreme Court's holding in *Doyle v. Ohio* "'that the use for impeachment purposes of [criminal defendants'] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.'" *Id.* (quoting 426 U.S. 610, 619 (1976)). The state appellate court explained that, "unlike the two defendants in *Doyle*, who said nothing about the alleged drug sale after they were arrested and received *Miranda* warnings, [Petitioner] gave police a statement about the events surrounding the shooting," and, "at trial, [Petitioner] testified about events that occurred during the two hours between the shooting and his arrest that he had not described in his statement to police." *Id.*

Acknowledging that "the prosecutor referred to [Petitioner's] failure to include these events in his statement to police" "[a]t various times" during the trial, the Minnesota

12

Court of Appeals agreed with the state district court that the prosecutor's conduct did not amount to an "impermissibl[e] use[ of Petitioner's] post-arrest silence as substantive evidence of guilt and to impeach him." *Id.* at *3-4. Like the state district court, the Minnesota Court of Appeals based its decision on the United States Supreme Court's holding in *Anderson v. Charles* that *Doyle* does not apply to a cross-examination "'designed . . . to elicit an explanation'" as to why the defendant told police one version of the events when he was arrested and testified to another version at trial. *Id.* at *4 (quoting 447 U.S. 404, 409 (1980) (per curiam)). The state appellate court reasoned:

> [L]ike the cross-examination in *Anderson*, the prosecutor's references to [Petitioner's] failure to include certain events in his statement to police were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement. Thus, the prosecutor did not commit misconduct by referring to the omissions from [Petitioner's] statement to police, and [Petitioner] has failed to show that the result of his appeal would have been different if appellate counsel had obtained an unredacted copy of his statement to police and argued that the prosecutor improperly referred to [Petitioner's] post-arrest silence.

*Id.*

### c. Petition for Further Review

Petitioner sought further view by the Minnesota Supreme Court. *See generally* Pet. for Review, Resp't's App. Ex. 9, ECF No. 6-2 at 102-11. Petitioner continued to challenge the prosecutor's use of his post-arrest silence; trial counsel's failure to object to such conduct by the prosecutor; and appellate counsel's failure to obtain his complete file and raise these issues on appeal. Pet. for Review at 2-3, 4-5, 7-9.

13

Petitioner also challenged the treatment of his motion to amend and his claim of ineffective assistance of trial counsel based on the failure to move for suppression of his statement:

> Petitioner raised the issue of ineffective-assistance of counsel to fail to object to an unconstitutionally-obtained apparent confession in a motion to amend. The Appellate Court found that the District Court addressed the merits but did not abuse its discretion to deny without an evidentiary hearing. It was deemed meritless without explanation.

Pet. for Review at 6; *see also* Pet. for Review at 6-7; Resp. at 9 (noting claim that "[t]rial counsel was ineffective for failure to seek suppression of his statement" among claims raised in petition for review).

The Minnesota Supreme Court denied the petition for further review. *McGinnis v. State*, No. A17-1674 (Minn. Aug. 21, 2018) (order).[3]

## 2. Second Petition for Postconviction Relief

Petitioner subsequently filed a second petition for postconviction relief. *See, e.g.*, Pet. at 5, 15; Resp. at 10. Petitioner claimed, among other things, that he received ineffective assistance of appellate counsel for failing to raise on direct appeal that trial counsel was ineffective for not seeking to suppress his statement. Postconviction Order II at 3-9; *see* Postconviction Mem. II at 9-11, 14-22; *see generally* Second Pet. for Postconviction Relief.[4]  The state district court denied the petition, concluding that the

---

[3] *See infra* n.4.

[4] These are publicly available documents from Petitioner's underlying state court proceedings in Stearns County, Minnesota, Case No. 73-CR-14-2166: Petitioner's Petition for Post-Conviction Relief, filed December 13, 2018, Index No. 224 [Second Pet. for Postconviction Relief]; Petitioner's Memorandum in Support of Petition for Postconviction Relief, filed December 13, 2018, Index No. 225 [Postconviction Mem. II]; and the state district court's Order, filed April 2, 2019, Index No. 234 [Postconviction Order II].

claim was procedurally barred because Petitioner "ha[d] been aware of the factual basis for this claim since trial." Postconviction Order II at 5. Petitioner did not appeal. Pet. at 6; Resp. at 10.

### D. Habeas Proceedings

Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2254. As best as this Court is able to tell, Petitioner seeks habeas relief on three grounds. The first two are related. Grounds 1 and 2 each claim ineffective assistance of appellate counsel with respect to the prosecutor's use of Petitioner's post-arrest silence. Ground 1 is for "use of Petitioner's silence as substantive evidence and in [the prosecution's] case-in-chief." Pet'r's Mem. in Supp. at 1, ECF No. 1-1. Ground 2 is for "use of Petitioner's silence as impeachment." Pet'r's Mem. in Supp. at 11. Each ground claims the same two deficiencies by appellate counsel on direct appeal: (a) failure to raise that the prosecutor improperly referred to Petitioner's post-arrest silence,[5] and (b) failure to raise ineffective assistance of trial counsel for not objecting to the prosecutor's references to Petitioner's post-arrest silence. Pet'r's Mem. in Supp. at 1, 11. The Court will refer to these as Grounds 1(a) and 2(a) and 1(b) and 2(b), respectively. Ground 3 claims ineffective assistance of trial counsel for "agreeing with the [prosecution] to enter an unconstitutionally[]obtained apparent confession into the record." Pet'r's Mem. in Supp. at 13.

Respondent filed its Response to the Petition. *See generally* Resp. Petitioner moved for and was granted a 90-day extension of time to file his reply. ECF Nos. 7, 9.

---

[5] Petitioner refers to this as failing to raise this issue as "plain[]error." Pet'r's Mem. in Supp. at 2, 12.

In addition, Petitioner has filed three motions: a motion requesting an evidentiary hearing on Grounds One and Two; a motion pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts for Respondent to provide the trial transcript; and a motion to introduce approximately 60 pages of the trial transcript.

### III. ANALYSIS

A state prisoner may seek a writ of habeas corpus in federal court "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotation and citation omitted). Absent a claim that falls within the parameters of 28 U.S.C. § 2254(d), a habeas corpus petition will not prevail.

### A. Claims Not Properly Exhausted & Procedurally Defaulted

Respondent argues that not only are Grounds 1(b), 2(b), and 3 not properly exhausted, they are all procedurally defaulted.

### 1. Exhaustion

In order for habeas relief to be granted, a state prisoner first must show that he "has exhausted the remedies available" in the state courts. 28 U.S.C. § 2254(b)(1)(A). To satisfy this exhaustion requirement, the state prisoner "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)" in a manner that alerts the court to the claim's federal nature and gives "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and quotations omitted); *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). "A petitioner must present *both* the *factual and legal* premises of his claims to the state courts in order to exhaust the claims properly." *Dansby v. Hobbs*, 766 F.3d 809, 823 (8th Cir. 2014) (quotation omitted); *accord Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997). "The onus rests on the prisoner to present the substance of his federal claims in each appropriate state court . . . ." *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010) (quotation omitted).

### a. Grounds 1(b) & 2(b)

Grounds 1(b) and 2(b) claim ineffective assistance of appellate counsel on direct appeal for failing to argue ineffective assistance of trial counsel based on trial counsel's failure to object to the prosecutor's references to Petitioner's post-arrest silence.

In his first petition for postconviction relief, Petitioner raised several claims of ineffective assistance of *trial* counsel, including that trial counsel failed to object to the

prosecutor's references to his post-arrest silence.   Postconviction Mem. I at 35-38, Postconviction Order I COL ¶ 19; *see also* Postconviction Mem. I at 39-44; Postconviction Order I COL ¶¶ 20-27.   Petitioner also raised two claims of ineffective assistance of appellate counsel, one of which was appellate counsel's failure to argue on direct appeal that the prosecutor improperly referred to Petitioner's post-arrest silence.   Postconviction Mem. I at 45-48; Postconviction Order I COL ¶¶ 33-34.   Petitioner did not, however, claim that *appellate* counsel was ineffective on direct appeal for failing to argue ineffective assistance of trial counsel based on trial counsel's failure to object to the prosecutor's references to Petitioner's post-arrest silence.   Accordingly, Petitioner did not fairly present Grounds 1(b) and 2(b) to the state courts.

### b.  Ground 3

Ground 3 claims ineffective assistance of trial counsel "for agreeing with the [prosecution] to enter an unconstitutionally-obtained apparent confession into the record." Pet'r's Mem. in Supp. at 13.  *See McGinnis II*, 2018 WL 3097169, at *1 ("The parties stipulated to redactions of parts of the statement, including [Petitioner's] invocation of his right to remain silent.").

There is no dispute that Ground 3 was not raised in Petitioner's first petition for postconviction relief.  Petitioner argues that Ground 3 was raised in his second motion to amend that petition.  Pet'r's Traverse at 21, ECF No. 10.  Along with asserting trial counsel was ineffective for not seeking to suppress his statement, Petitioner also argued that trial counsel was ineffective for agreeing to the admission of the redacted statement at trial. Motion to Amend II at 2, 4.  As noted above, it is not clear what consideration, if any, the

state district court gave to Petitioner's motions to amend.  Regardless of whether the state district court expressly addressed the motion to amend, the Court concludes that Petitioner fairly presented the factual and legal bases for Ground 3 to the state district court in his second motion to amend.  *See* Minn. Stat. § 590.03 ("The court may at any time prior to its decision on the merits permit a withdrawal of the petition, may permit amendments thereto, and to the answer. The court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form.").

When Petitioner appealed the denial of his first petition for postconviction relief to Minnesota Court of Appeals, however, he did not present fairly present Ground 3 to the state appellate court.  On appeal, Petitioner argued that the state district court erred in its treatment of his ineffective-assistance-of-trial-counsel claims based on counsel's failure to object to numerous comments made by the prosecutor.  *See* Postconviction App. Br. at 9-25.  In the approximately 15 pages of briefing addressing how the prosecutor's comments amounted to prosecutorial misconduct and why trial counsel should have objected to them, Petitioner cites that trial "counsel demonstrated a lack of understanding of [his] rights guaranteed through *Miranda* by allowing a redacted version of his . . . statement to be the only one entered into the record" as a reason why trial "counsel's failure to object[]to prejudicial comments was a deficient performance."  Postconviction App. Br. at 24.  This statement was made in support of a wholly different argument—responding to purported prosecutorial misconduct as opposed to the admission or suppression of evidence.  It cannot be said that Petitioner fairly presented Ground 3 to the Minnesota Court of Appeals.

When seeking further review by the Minnesota Supreme Court, Petitioner did raise the constitutionality of the "apparent confession," noting that he presented "the issue of ineffective[]assistance of counsel to fail to object to an unconstitutionally[]obtained apparent confession in a motion to amend." Pet. for Review at 6; *see* Pet. for Review at 5-7. But, inclusion of Ground 3 in the petition for review does not account for Petitioner's failure to present it to the Minnesota Court of Appeals. *See Rivera v. King*, No. 10-cv-3954 (RHK/FLN), 2011 WL 4458729, at *6 (D. Minn. Aug. 12, 2011), *adopting report and recommendation*, 2011 WL 4436149 (D. Minn. Sept. 23, 2011). Accordingly, Petitioner has not fairly presented Ground 3 to each appropriate state court.

### 2. Procedural Bar

Not only were Grounds 1(b), 2(b), and 3 not fairly presented, they are now procedurally defaulted. A claim is unexhausted if state law allows the petitioner to raise the claim by any available state court procedure. *See* 28 U.S.C. § 2254(c). But, if a petitioner has not fairly presented his claim in state court *and* a state procedural rule precludes further litigation of the claim, that claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) ("If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now."). In Minnesota, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Thus, Minnesota law provides a procedural rule that denies further litigation of a claim that could

have been raised on direct appeal. *Murphy v. King*, 652 F.3d 845, 849-50 (8th Cir. 2011). This rule "bars not only claims that were known at the time of direct appeal, but also claims that *should have* been known." *Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013) (citing *Knaffla*, 243 N.W.2d at 741).

Additionally, this procedural rule applies to claims that could have been raised in an earlier petition for postconviction relief. "[I]f . . . a claim could have been raised in a previous postconviction petition, the *Knaffla* rule bars consideration of the claim in a subsequent petition for postconviction relief." *Pearson v. State*, 891 N.W.2d 590, 597 (Minn. 2017); *accord Crow v. State*, 923 N.W.2d 2, 9 (Minn. 2019).

Grounds 1(b) and 2(b) concern ineffective assistance of appellate counsel, so they could not have been raised in Petitioner's direct appeal. But, the basis for Petitioner's claim that appellate counsel was ineffective for not arguing on direct appeal that trial counsel's performance was deficient when trial counsel failed to object to the prosecutor's references to Petitioner's post-arrest silence was known or should have been known to Petitioner at the time he filed his first petition for postconviction relief, wherein he claimed appellate counsel's performance was deficient by failing to raise other claims on direct appeal and argued that trial counsel was deficient for failing to object to the prosecutor's references. Accordingly, Minnesota's *Knaffla* rule bars Petitioner from pursuing Grounds 1(b) and 2(b) in a subsequent petition for postconviction relief.

Ground 3 claims ineffective assistance of trial counsel based on "agreeing with the [prosecution] to enter an unconstitutionally[]obtained apparent confession into the record." Pet'r's Mem. in Supp. at 13. As explained by the state district court in connection with

Petitioner's second petition for postconviction relief, Petitioner knew or should have known about this claim at the time of his direct appeal and certainly no later than his first petition for postconviction relief:

> Petitioner argues that trial counsel was ineffective because he failed to seek suppression of statements made by Petitioner during a *Mirandized* interview with the police following a purported invocation of his right to remain silent.  Portions of the statement were redacted by stipulation prior to trial, but the final product contained what Petitioner characterizes as damaging statements as well as a purported invocation of the right to remain silent.
>
> . . . .
>
> Petitioner's explanation regarding the untimely presentation of this claim ignores the evidence suggesting that he was aware of its factual basis prior to both direct appeal and the first [petition for postconviction relief] – regardless of whether or when he came into possession of [the trial exhibit transcription of his redacted statement]. . . . Petitioner has always known of the "damaging" substance of the statement because he gave it.  Petitioner heard and read exactly what was published to the jury in real time, and he has always known that trial counsel failed to bring a pre-trial suppression motion.  Further, . . . attachments . . . show that Petitioner possessed a copy of his pre-trial statement before the direct appeal.  Specifically, in a letter dated June 10, 2015, which was sent by trial counsel to appellate counsel, trial counsel states that Petitioner was previously served with a copy of the discovery, which would have included the pre-trial statement.  Petitioner himself included the original statement to police in his first [petition for postconviction relief], further demonstrating that he possessed a copy and knew of its contents.

Postconviction Order II at 3-5 (citations omitted).  Accordingly, Minnesota's *Knaffla* rule likewise bars Petitioner from pursuing Ground 3 in a subsequent petition for postconviction relief.

Because Petitioner is barred from pursuing Grounds 1(b), 2(b), and 3 by a state procedural rule, they are procedurally defaulted.

### 3. Exceptions Not Applicable

Procedurally defaulted claims are generally barred from federal habeas review. *Coleman*, 501 U.S. at 750. The merits of a procedurally barred claim will be addressed by a federal court only when one of two narrow exceptions applies: (1) where the state "prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) where the state prisoner can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*; *see also McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997). If neither of these exceptions applies, the merits of a procedurally defaulted claim will not be entertained by a federal court. *See, e.g.*, *Murphy*, 652 F.3d at 850 (declining to excuse petitioner's procedurally defaulted claims for failure to establish either exception).

Petitioner addresses cause and prejudice with respect to Ground 3. "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quotation omitted). Petitioner argues that he could not have raised Ground 3 earlier because "appellate counsel never obtained any documents other than the trial transcripts, including either the redacted or unredacted versions of [his] statements." Pet'r's Traverse at 22. Construing Petitioner's filings liberally and based on this recurrent argument by Petitioner that he could not have raised certain claims at an earlier point in the proceedings because of when he obtained copies of

his redacted and unredacted statement, the Court considers this argument not only with respect to Ground 3, but Grounds 1(b) and 2(b) as well.

As stated by the state district court, Petitioner had access to his statement before his direct appeal and no later than the time of his first petition for postconviction relief, when he included a copy of it with the petition. Even assuming for purposes of these proceeding that the first opportunity Petitioner had to fairly present Grounds 1(b), 2(b), and 3 to the state courts was in connection with his first petition for postconviction relief, Petitioner has not shown cause for the default. "Because [Petitioner] has not established cause for the default, the question of prejudice need not be reached." *Murphy*, 652 F.3d at 850. Lastly, Petitioner has not presented any new evidence affirmatively demonstrating that he is innocent of the crime for which he was convicted. *See id.* ("To fall within the fundamental-miscarriage-of-justice-exception, a habeas petitioner must present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.") (quotation omitted).

### 4. Summary

In sum, Petitioner failed to fairly present Grounds 1(b), 2(b), and 3 to each appropriate state court. Because Minnesota's *Knaffla* rule bars further litigation of these claims, Grounds 1(b), 2(b), and 3 are procedurally defaulted. And, because Petitioner "has not demonstrated cause to excuse the default or a miscarriage of justice," Grounds 1(b), 2(b), and 3 must be summarily denied. *Id.*; *see also*, *e.g.*, *Turnage*, 606 F.3d at 942.

24

### B. Properly Exhausted Claims

Grounds 1(a) and 2(a) claim ineffective assistance of appellate counsel for failing to obtain the redacted and unredacted versions of Petitioner's statement and to raise on direct appeal the prosecutor's use of Petitioner's statement and references to his post-arrest silence at trial.

### 1. Right to Effective Assistance of Counsel

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). "To establish a constitutional violation, a petitioner must show both that counsel's performance was deficient and that the deficiency prejudiced his defense." *Barnes v. Hammer*, 765 F.3d 810, 813-14 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 687); *accord Woods v. Norman*, 825 F.3d 390, 394 (8th Cir. 2016); *Williams v. Roper*, 695 F.3d 825, 830 (8th Cir. 2012). "Under *Strickland*, in evaluating whether an attorney provided objectively unreasonable assistance, a reviewing court should minimize the effects of hindsight and recognize a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quoting 466 U.S. at 689).

In light of this strong "presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal." *Id.* (citing *Jones*

*v. Barnes*, 463 U.S. 745, 751-54 (1983)); *accord Walker v. United States*, 810 F.3d 568, 579 (8th Cir. 2016). As a result, courts are "particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013). "Absent contrary evidence, [courts] assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe*, 160 F.3d at 418 (quotation omitted); *accord Charboneau*, 702 F.3d at 1136-37. To show prejudice under *Strickland*'s second prong in the context of an ineffective-assistance-of-appellate-counsel claim, there must be "a reasonable probability that the outcome of the appeal would have been different if counsel had raised the claim." *Roe*, 160 F.3d at 418 (quotation omitted).

Further, with respect to claims of ineffective assistance of counsel, "AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams*, 695 F.3d at 831 (quoting *Pinholster*, 563 U.S. at 202); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam); *Barnes*, 765 F.3d at 813. As stated above, "[t]here is a strong presumption that counsel has rendered adequate assistance and made all significant decisions for tactical reasons rather than through neglect." *Barnes*, 765 F.3d at 814. "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" *Id.* (quoting *Pinholster*, 563 U.S. at 190). "Under § 2254(d), the 'pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.'" *Taylor v. Kelley*, 825 F.3d 466, 470 (8th Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *see Williams*, 695 F.3d at 831-32 ("[T]he

proper question is whether there is any reasonable argument that the state court's judgment is consistent with *Strickland*.") (quotation omitted).

Like the Minnesota Court of Appeals, this Court assumes that appellate counsel's failure to obtain the redacted and unredacted statements and challenge on direct appeal the prosecutor's use of Petitioner's post-arrest silence at trial was deficient performance, *see McGinnis II*, 2018 WL 3097169, at *3, and therefore turns to *Strickland*'s prejudice prong.

### 2. Post-Arrest Silence

The Minnesota Court of Appeals correctly recognized that the governing federal law with respect to the prosecution's use of Petitioner's statement and post-arrest silence derived from the United States Supreme Court's decisions in *Doyle* and *Anderson*. *See Ervin v. Bowersox*, 892 F.3d 979, 983 (8th Cir. 2018).

In *Doyle*, the Supreme Court "held that the Constitution prohibits the state from using silence to impeach a defendant's testimony at a later trial after he has invoked his post-*Miranda* right to remain silent." *Id.* (citing 426 U.S. at 619); *see, e.g.*, *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986) ("The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony."). After the defendants in *Doyle* were arrested and read their *Miranda* rights, they elected not to speak with law enforcement.[6] 426 U.S. at 611-14. At their separate trials, each testified that he had been framed and gave an exculpatory explanation for the

---

[6] *See infra* n.8.

events that had transpired. *Id*. at 612-13. On cross-examination, the prosecution asked each defendant "why he had not told the frameup story to [law enforcement] when [he was] arrested." *Id.* at 613. The Supreme Court held that the prosecution's inquiry and use of the defendants' post-arrest silence was inconsistent with *Miranda* because "[s]ilence in the wake of [a *Miranda*] warning[] maybe nothing more than the arrestee's exercise of th[o]se . . . rights," and was therefore unconstitutional. *Id.* at 617.

The Minnesota Court of Appeals correctly observed that Petitioner's circumstances differed from the circumstances of the *Doyle* defendants. "[U]nlike the two defendants in *Doyle*, who said nothing about the alleged drug sale after they were arrested and received *Miranda* warnings, [Petitioner] gave police a statement about the events surrounding the shooting" after he was read his *Miranda* rights. *McGinnis II*, 2018 WL 3097169, at *3. "Then, at trial, [Petitioner] testified about events that occurred during the two hours between the shooting and his arrest that he had not described in his statement to police." *Id.*

The Minnesota Court of Appeals, like the state district court, then looked to *Anderson*. In *Anderson*, the defendant was arrested and read his *Miranda* rights. 447 U.S. at 405. Police then proceeded to question the defendant about a stolen vehicle. *Id.* The defendant told police that he stole the car from an area "about two miles from the local bus station." *Id.* At trial, however, the defendant testified that he took the car from the parking lot of a tire shop next to the bus station, both of which were visible from the county jail. *Id.* On cross-examination, the prosecutor asked the defendant why he had not told police that he took the car from the tire shop if that was the truth. *Id.* at 405-06.

Recognizing that "*Doyle* bar[red] the use against a criminal defendant of silence maintained after receipt of governmental assurances," the Supreme Court concluded that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements."  *Id.* at 408; *see Ervin*, 892 F.3d at 983 ("The *Doyle* rule does not apply, however, to circumstances in which the state inquires into post-*Miranda* inconsistent statements about why a defendant was silent.") (citing *Anderson*, 447 U.S. at 408-09).  The Supreme Court explained that the prosecutor's cross-examination was constitutionally permissible as it did not make "unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.  As to the subject matter of his statements, the defendant has not remained silent at all."  *Anderson*, 447 U.S. at 408.  Noting that "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version," the Supreme Court rejected the idea that "*Doyle* . . . require[d] any such formalistic understanding of 'silence.'"  *Id.* at 409.

Applying *Anderson* to the facts of Petitioner's case, the Minnesota Court of Appeals concluded:

> At various times during [Petitioner's] trial, the prosecutor referred to [Petitioner's] failure to include these events in his statement to police.  [Petitioner] argues that, when he failed to include the events in his statement to police, he was exercising his right to remain silent about the events, and the prosecutor's references were misconduct because they impermissibly used his post-arrest silence as substantive evidence of guilt and to impeach him.
>
> . . . .

29

> We conclude that, like the cross-examination in *Anderson*, the prosecutor's references to [Petitioner's] failure to include certain events in his statement to police were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement. Thus, the prosecutor did not commit misconduct by referring to the omissions from [Petitioner's] statement to police . . . .

*McGinnis II*, 2018 WL 3097169, at *3-4.

Petitioner's § 2254(d) arguments are difficult to parse and often overlap with one another. As best as this Court is able to tell, Petitioner argues the Minnesota Court of Appeals's decision (a) was contrary to *Doyle*, (b) was based on an unreasonable determination of fact, and (c) involved an unreasonable application of *Anderson*. *See Jones v. Jerrison*, 20 F.3d 849, 853 (8th Cir. 1994); *see also Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).

### a. Not Contrary to *Doyle*

A state-court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Petitioner repeatedly emphasizes the "limited" nature of his statement to police compared to his more fulsome account at trial. *See, e.g.*, Pet'r's Mem. in Supp. at 2, 11; Pet'r's Traverse at 5, 7. Thus, it appears to be Petitioner's position that *Doyle* applies, and the Minnesota Court of Appeals's decision was contrary thereto, because he asserted his

right to remain silent as to everything not said during that "limited" statement.[7]  But, *Doyle* did not involve any sort of "limited" statement.  *Doyle* involved the exercise of the right to remain silent after receiving a *Miranda* warning.[8]  Because Petitioner did *not* remain silent in the wake of a *Miranda* warning, choosing instead to give a statement, the Minnesota Court of Appeals's conclusion that *Doyle* did not apply was not contrary to clearly established federal law.[9]

### b.  Not an Unreasonable Determination of Fact

Because Petitioner claims that the Minnesota Court of Appeals both made an unreasonable determination of fact and unreasonably applied *Anderson* to the facts of his case, the Court starts with his challenge to the factual determination.  A writ of habeas

---

[7] Petitioner describes this as "a gross oversimplification of [his] argument."  Pet'r's Traverse at 7 ("The MNCOA and Respondent claim that it is Petitioner's argument that by merely 'failing to mention' certain facts in his original statement to police that he was exercising silence about those facts and it was therefore an improper use of silence for the prosecutor to mention those facts.  This is a gross oversimplification of Petitioner's argument.") (citation omitted); *see also* Pet'r's Traverse at 16.  Petitioner states that he

> gave a short, limited statement to police in which he: (1) made clear he was only going to talk about the shooting incident . . . and was not going to answer questions; (2) invoked silence unambiguously and unequivocally after describing said incident; and (3) never mentioned or was ever asked about what he had done after the incident.  Due to these facts, the prosecutor's comments . . . faulting Petitioner for not volunteering additional information to police actually punished him for having chosen to invoke silence rather than give police a full debriefing.

Pet'r's Traverse at 7.  The Court is at a loss as to how else to understand Petitioner's position.

[8] The fact that one of the *Doyle* defendants had an *extremely* brief exchange with police did not change the Supreme Court's analysis.  *See Anderson*, 447 U.S. at 407 n.2 ("One [*Doyle*] defendant said nothing at all.  The other asked arresting officers, 'What's this all about?'  When told the reason for his arrest, he exclaimed, 'you [sic] got to be crazy,' or 'I don't know what you are talking about.'") (citations omitted).  Nor does it change this Court's analysis.  While Petitioner likens his "limited" statement to this brief exchange, *see* Pet'r's Traverse at 15-16, the length and extent of Petitioner's statement is plainly distinguishable from the exchange in *Doyle*.

[9] For the same reason, Petitioner's case is distinguishable from *Greenfield*, another Supreme Court case Petitioner relies on.  In *Greenfield*, the defendant was advised of his *Miranda* rights on two separate occasions.  474 U.S. at 286.  Each time the defendant "was asked 'if he wished to give up the right to remain silent,' he declined, stating he wanted to talk to an attorney."  *Id.*  At trial, the prosecutor used the defendant's exercise of his right to remain silent as evidence that the defendant "demonstrated a degree of comprehension that was inconsistent with his claim of insanity."  *Id.* at 287 (footnote omitted).  The Supreme Court held that such use was impermissible under *Doyle*.  *Id.* at 289-95.  Again, unlike the defendants in *Doyle* and *Greenfield*, Petitioner chose to make a statement to police after he was given a *Miranda* warning rather than exercise his right to remain silent.

corpus may be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's factual determinations are accorded substantial deference. *See id.* § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings"). Significantly, "'[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable* – a substantially higher threshold.'" *Boss v. Ludwick*, 760 F.3d 805, 810 (8th Cir. 2014) (emphasis added) (quoting *Landrigan*, 550 U.S. at 473). Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *accord Landrigan*, 550 U.S. at 474.

### i. Motions to Expand the Record & Introduce Trial Transcripts

Petitioner claims that the Minnesota Court of Appeals made an unreasonable determination of fact when characterizing the prosecutor's comments. Petitioner has filed two motions related to the inclusion of the trial transcript. Respondent did not respond to either motion.

Petitioner's trial took place over the course of six days, *McGinnis II*, 2018 WL 3097169, at *1, and the trial transcript is six volumes long, Resp. at 2. Consistent with Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent advised the Court that the trial transcript was available. Rule 5(c) further provides that the Court may order Respondent to furnish parts of the trial transcript.

Petitioner's motion to expand the record preceded his motion to introduce portions of the trial transcript.  In his motion to expand the record, Petitioner asserted that "[t]he prosecutor made dozens of comments that punished him for invoking his right to remain silent in the state's opening statement, case-in-chief, closing argument and . . . cross examination of Petitioner, violating his due process rights."  Mot. to Expand at 1-2. Petitioner asserted that this Court would be unable to determine whether his testimony was inconsistent with his statement and whether "the prosecutor's comments were not designed to draw meaning from silence, but to elicit an explanation for an inconsistent statement" without "[his] testimony and all of the different quotes [he] alleges were due process violations."  Mot. to Expand at 2.

In the later motion to introduce excerpts of the trial transcript, Petitioner supplied approximately 60 pages of the trial transcript, including portions of the prosecutor's opening statement; testimony from law enforcement officers; Petitioner's testimony; and the prosecutor's closing arguments.  Mot. to Introduce at 2-3; *see generally* Attach. to Mot. to Introduce, ECF No. 19.  Petitioner describes these excerpts as containing the alleged *Doyle* violations as well as his "entire direct trial testimony" which can be compared with his statement.  *See* Mot. to Introduce at 2-3.

This is not a situation in which Petitioner has failed to develop the factual basis of his challenge to the prosecutor's use of his post-arrest silence in state court.  *Cf.* 28 U.S.C. § 2254(e)(2).  Petitioner referenced these excerpts from the trial transcript in his first petition for postconviction relief and on appeal from the denial thereof.  *Compare* Postconviction Mem. at A12-22 *with* Attach. to Mot. to Introduce; *see, e.g.*, Postconviction

App. Br. at 8, 11, 17, 21.  Nor is this a situation where Petitioner is attempting to supplement the record beyond the proceedings in state court.  *Cf. Mark v. Ault*, 498 F.3d 775, 787-88 (8th Cir. 2007); *Hall v. Luebbers*, 296 F.3d 685, 700-01 (8th Cir. 2002). Further, Petitioner has attested "under penalty of perjury" that the attached transcript pages are copies of the official trial transcript.  Mot. to Introduce at 4; *see* Rule 7(a) of the Rules Governing § 2254 Cases in the United States District Courts ("The judge may require that . . . additional materials [submitted] be authenticated."); *see also* 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury).  And, as stated at the outset, Respondent has not objected to their inclusion.

In sum, Petitioner has provided the relevant portions of the trial transcript.  The Court therefore recommends that his motion requesting Respondent to provide the trial transcript be denied as moot.  The Court further recommends that Petitioner's motion seeking to add certain excerpts of the trial transcript to the record before the Court be granted.  Consistent with these recommendations, the Court has reviewed those excerpts in connection with Petitioner's claim that the Minnesota Court of Appeals made an unreasonable determination of fact.

### ii. Characterization of the Prosecutor's References to Petitioner's Post-Arrest Silence

The Minnesota Court of Appeals summarized the prosecutor's use of Petitioner's post-arrest silence as follows:

> At various times during [Petitioner's] trial, the prosecutor referred to [Petitioner's] failure to include these events in his statement to police.  [Petitioner] argues that, when he failed to include the events in his statement to police, he was exercising

> his right to remain silent about the events, and the prosecutor's
> references were misconduct because they impermissibly used
> his post-arrest silence as substantive evidence of guilt and to
> impeach him.

*McGinnis II*, 2018 WL 3097169, at *3. The Minnesota Court of Appeals determined that

"the prosecutor's references to [Petitioner's] failure to include certain events in his

statement to police were not designed to draw meaning from silence, but to elicit an

explanation for a prior inconsistent statement." *Id.* at *4. Petitioner argues this factual

determination was unreasonable because the Minnesota Court of Appeals failed to address

the different ways "the prosecutor committed *Doyle* violations besides 'referring to

omissions' from his statement," Pet'r's Traverse at 6, and it cannot be said that the

prosecutor was "merely 'highlighting inconsistency,'" Pet'r's Traverse at 12; *see, e.g.*,

Pet'r's Traverse at 9, 11.

The Court has reviewed the 60 pages of trial transcript along with the quoted

passages in Petitioner's filings. Petitioner claims it was unreasonable for the Minnesota

Court of Appeals to characterize collectively the prosecutor's questions/statements as

referring to omissions from Petitioner's statement. The Court disagrees. The prosecutor's

questions/statements can be described as commenting on whether police received certain

information from Petitioner, the information police learned during the investigation, and

how information police received during the investigation differed from or was inconsistent

with Petitioner's statement and testimony. By means of example, in his statement,

Petitioner told police that he did not have a cell phone and was using his girlfriend's phone.

Redacted Stmt. at 5-6. At trial, Petitioner testified that he gave his phone to a friend before

going to the police.  Tr. 1471-72, Attach. to Mot. to Include.  Similarly, when asked by police if he had spoken to his girlfriend lately, Petitioner said that he had not.  Redacted Stmt. at 6.  At trial, Petitioner testified to speaking with her at least twice on the day in question—once in the morning when he went to change his shoes and again in the afternoon before he went to the police.  Tr. 1449, 1452-53, 1470, Attach. to Mot. to Include.

There are a small handful of instances in which the prosecutor arguably called attention to Petitioner's invocation of the right to remain silent.  *E.g.*, Tr. 1503-04[10], Attach. to Mot. to Include; Redacted Stmt. at 7 ("I don't want to talk anymore."); *see Greenfield*, 474 U.S. at 295 n.13 ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted."); *Fields v. Leapley*, 30 F.3d 986, 990 (8th Cir. 1994) ("[F]or purposes of analyzing a *Doyle* violation claim, we must treat a defendant's invocation of his *Miranda* rights not as a statement, but as post-*Miranda* warnings silence."); *see also Brecht v. Abrahamson*, 507 U.S. 619, 628-29 (1993).

Even assuming the Minnesota Court of Appeals's factual determination was erroneous with respect to this small handful, that does not mean the state appellate court's collective characterization of the prosecutor's questions/statements as a whole was

---

[10]

Q: And you're the one that decided to stop talking, right?

A: Correct.

Q: The officer was more than happy to let you tell her whatever you wanted to tell her, right?

A: Yes, she was.

unreasonable. *See Boss*, 760 F.3d at 810. It was not unreasonable for the Minnesota Court of Appeals to characterize collectively the prosecutor's questions/statements as referring to Petitioner's failure to include certain events in his statement to police when the majority of the prosecutor's questions/statements were directed at comparing and contrasting information police learned as a result of their investigation with what Petitioner told them in his statement and testified to at trial. Likewise, it was not unreasonable for the Minnesota Court of Appeals to determine that these questions/statements evidenced the prosecutor's efforts to flush out an explanation for the differences and inconsistencies, rather than trying to draw meaning from Petitioner's post-arrest silence. Petitioner has not met his burden to show by clear and convincing evidence that the Minnesota Court of Appeals's made an unreasonable determination of fact.

### c. Not an Unreasonable Application of *Anderson*

Now turning to Petitioner's claim that the Minnesota Court of Appeals unreasonably applied *Anderson* to the facts of his case, a state court unreasonably applies clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. When deciding whether a state court decision unreasonably applied clearly established federal law, a federal habeas court should ask whether the state court's application was "objectively unreasonable." *Id.* at 409. In other words, it is not enough that a "state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

According Petitioner's filings the benefit of a liberal construction, Petitioner argues that the Minnesota Court of Appeals unreasonably applied *Anderson* to the facts of his case because the state appellate court failed to consider whether his statement was inconsistent with his trial testimony and did not adequately explain its analysis.  *See, e.g.*, Pet'r's Traverse at 6, 12-16.  Petitioner argues that his case is distinguishable from *Anderson* because "he made a very short statement; . . . he limited his statement to only address the shooting incident and clearly refused to answer questions; . . . he then reasserted his right to remain silent; . . . his trial testimony was completely factually consistent with his statement; . . . and . . . the facts the prosecutor most consistently faulted [him] for . . . had never been addressed nor even asked about by police before he invoked silence."  Pet'r's Traverse at 12.  According to Petitioner, the Minnesota Court of Appeals unreasonably applied *Anderson* by focusing solely on whether he had elected to speak after being advised of his *Miranda* rights, rather than also taking into account whether his trial testimony was factually inconsistent with his statement and if the prosecutor's comments were, as a whole, designed to elicit an explanation for that inconsistency.

*Anderson* involved a patent inconsistency: the defendant told the police one thing (he took the car from an area about two miles away from the bus station) and testified to another (he took the car from the tire shop next to the bus station).  447 U.S. at 405.  As discussed above, there were similar stark inconsistencies between Petitioner's statement to police and his testimony at trial.  Other parts of Petitioner's testimony, while not directly inconsistent with his statement, raised questions as to the conspicuous absence of certain information from Petitioner's statement.

At bottom, Petitioner is attempting to draw a line of demarcation between testimony that is patently inconsistent with a prior statement and testimony that manifests inconsistency more indirectly. The Sixth Circuit Court of Appeals attempted to draw a similar line in *Anderson*. 447 U.S. at 408. As summarized by the Supreme Court,

> the Court of Appeals found that the earlier portion of the exchange concerned the separate issue of the [defendant's] failure to tell arresting officers the same story he told the jury. In the court's view, these questions were unconstitutional inquiries about postarrest silence. Thus, the Court of Appeals divided the cross-examination into two parts. It then applied *Doyle* to bar questions that concerned the [defendant's] failure to tell the police the story he recounted at trial.

*Id.* (quotation and citation omitted).

The Supreme Court rejected the Sixth Circuit's approach:

> We do not believe that the cross-examination in this case can be bifurcated so neatly. The quoted colloquy, taken as a whole, does not refer to the [defendant's] exercise of his right to remain silent; rather it asks the [defendant] why, if his trial testimony were true, he didn't tell the officer that he stole the decedent's car from the tire store parking lot instead of telling him that he took it from the street. Any ambiguity in the prosecutor's initial questioning was quickly resolved by explicit reference to [the police officer's] testimony, which the jury had heard only a few hours before. The questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.

*Id.* at 408-09 (quotation and citation omitted). In closing, the Supreme Court observed that "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Id.* at 409.

*Anderson* distinguishes between defendants who elect to make a statement after being advised of their *Miranda* rights and *Doyle* defendants who elect to remain silent. "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Id.* at 408. The Minnesota Court of Appeals recognized this distinguishing fact in Petitioner's case: Petitioner had not remained silent but made a prior statement that was at least partially inconsistent with his trial testimony. And, as discussed above, it was not an unreasonable determination of fact for the Minnesota Court of Appeals to conclude that the prosecutor's questions/statements "were not designed to draw meaning from silence, but to elicit an explanation for [Petitioner's] prior inconsistent statement." *Id.* at 409.

Given the distinction between *Anderson* defendants who choose *not* to remain silent after being advised of their *Miranda* rights and *Doyle* defendants who choose *to* remain silent and "the fact that the . . . Supreme Court has not decided whether a defendant's assertion of his previously waived *Miranda* rights may be used against him," the Minnesota Court of Appeals did not unreasonably apply *Anderson* to the facts of this case when it concluded that no *Doyle* violation occurred. *Ervin*, 892 F.3d at 984.

### 3. No Prejudice Shown

The Court now returns to the fundamental question at hand: "whether there is 'any reasonable argument' that the state court's judgment is consistent with *Strickland*." *Williams*, 695 F.3d at 831-32 (quoting *Richter*, 562 U.S. at 105); *accord Woods*, 825 F.3d at 395. Based on the record before the Court and for the reasons stated above, it was not

objectively unreasonable for the Minnesota Court of Appeals to conclude that Petitioner failed to demonstrate prejudice resulting from appellate counsel's alleged deficient performance in failing to obtain his complete file and "argu[ing on direct appeal] that the prosecutor improperly referred to [Petitioner's] post-arrest silence." *McGinnis II*, 2018 WL 3097169, at *4.

### 4.  Motion/Request for Evidentiary Hearing

Petitioner has also moved for an evidentiary hearing on his ineffective-assistance-of-appellate-counsel claims.   Petitioner argues the Minnesota Court of Appeals's determination with respect to these claims was "not fairly supported by the record as a whole and [he] was not afforded a full and fair fact hearing to develop the material facts" in state court.  Pet'r's Req. for Evid. Hearing at 17, ECF No. 12.  Petitioner argues that he "is entitled to an evidentiary hearing to [(1)] present evidence that appellate counsel's failure to discover or argue the[] *Doyle* violations constituted a deficient performance," (2) overcome the presumption of reasonableness, and (3) demonstrate prejudice.  Pet'r's Req. for Evid. Hearing at 16.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*

It is not particularly clear to this Court what material facts Petitioner contends need further development. More importantly, the ineffective-assistance-of-appellate-counsel claims in Grounds 1(a) and 2(a) were determined on the merits by the Minnesota Court of Appeals. As a result, any contrary-to or unreasonableness determinations under § 2254(d) must be based on the record before the state courts. *Pinholster*, 563 U.S. at 181-85; *Brende v. Young*, 907 F.3d 1080, 1086 & n.4 (8th Cir. 2018). "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Pinholster*, 563 U.S. at 183 (quoting *Landrigan*, 550 U.S. at 474). Because the Court has concluded that the Minnesota Court of Appeals's determination with respect to Grounds 1(a) and 2(a) were not contrary to or an unreasonable application of federal law and did not result from an unreasonable determination of fact, the Court recommends that Petitioner's request for an evidentiary hearing be denied.

## IV. CERTIFICATE OF APPEALABILITY

A habeas corpus petitioner filing a petition under 28 U.S.C. § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A Certificate of Appealability may be granted only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to do so, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, it is highly unlikely that any other court would treat Petitioner's claims for relief differently than they are being treated here. Petitioner has not identified (and this Court cannot discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a Certificate of Appealability in this matter.

[Continued on next page.]

## V. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1, be **DENIED**.

2. Petitioner's Request for an Evidentiary Hearing with His Suggestions in Support, ECF No. 12, be **DENIED**.

3. Petitioner's Motion to Expand the Record Under Rule 7 of the Rules Governing § 2254 Cases, ECF No. 17, be **DENIED AS MOOT**.

4. Petitioner's Motion to Introduce Trial Transcripts into the District Court's Record, ECF No. 18, be **GRANTED**.

5. This action be **DISMISSED WITH PREJUDICE**.

6. Petitioner should **NOT** be granted a Certificate of Appealability.


Date: June____19____, 2020                          _____*s/ Tony N. Leung*_____
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *McGinnis v. Jansen*
                                                    Case No. 19-cv-2376 (NEB/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).