UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DEMETREUS ANTHONY MCGINNIS, | Case No. 19-CV-2376 (NEB/TNL) |
| Petitioner, | |
| v. | ORDER ON REPORT AND RECOMMENDATION |
| VICKI JANSEN, | |
| Respondent. | |

*Pro se* petitioner Demetreus Anthony McGinnis filed a petition under 28 U.S.C. § 2254 for writ of habeas corpus and several related motions. (ECF Nos. 1, 12, 17, 18.) In the Report and Recommendation dated June 19, 2020, United States Magistrate Judge Tony N. Leung recommends: denying McGinnis's petition, his motion/request for an evidentiary hearing, and his motion to expand the record; granting his motion to introduce trial transcripts; and dismissing the action with prejudice. (ECF No. 21 ("R&R").) McGinnis filed objections to the R&R, and Respondent Vicki Jansen filed a response brief to the objections. (ECF Nos. 25 ("Pet'r's Obj."), 29.) McGinnis then filed a motion to strike the response brief because Respondent filed it after the Court-ordered due date. (ECF No. 30.) In the absence of any discernible prejudice to McGinnis, the Court, in its discretion, denies the motion to strike and considers the response brief. *See*

1

*generally Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam) (finding no abuse of discretion by the court's consideration of a late-filed government response to § 2255 motion).

## BACKGROUND

The R&R and Minnesota Court of Appeals opinions explain the facts and procedural posture of this case. (R&R at 2–16; *see* Pet'r's Obj. at 1 (stating that the relevant "facts are undisputed")); *State v. McGinnis*, No. A15-1043, 2016 WL 3659127 (Minn. Ct. App. July 11, 2016) ("*McGinnis I*"); *McGinnis v. State*, No. A17-1674, 2018 WL 3097169 (Minn. Ct. App. June 25, 2018) ("*McGinnis II*"). The Court repeats some of these facts as necessary for its analysis.

### I. The Shooting Incident and McGinnis's Statement to Police

In March 2014, McGinnis was involved in an incident in which a man was shot and later died. Approximately two hours after the shooting, McGinnis, after being given a *Miranda* warning,[1] gave a short statement to the police, consisting of the following information. McGinnis met with two men in a car to sell them something. One of the men gave McGinnis counterfeit money and started to leave the car. When McGinnis grabbed his arm, he turned around, hit McGinnis in the face, and started running. McGinnis chased the man, who pulled out a gun. McGinnis and the first man wrestled; the second man joined the fray. The gun went off twice. One of the men grabbed the gun, pointed it

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

at McGinnis, and the gun "clicked." (ECF No. 6-3 at 110–20 ("Unredacted Stmt.") at 3.) The two men drove away. McGinnis said that he knew the first man "got hit." (*Id*.)

After giving this information to police, McGinnis told the officer that he did not want to talk anymore, and the officer stopped asking questions about the incident. (*See id*. at 7.) At its base, this habeas petition surrounds the treatment at trial of McGinnis's invocation of his right to remain silent.

## II.     The Trial and Appeal – *McGinnis I*

McGinnis was indicted in state court on various degrees of murder, among other counts. *McGinnis I*, 2016 WL 3659127, at *1. The trial lasted six days. (ECF No. 5 ("Resp.") at 2.) During the trial, the jury received a redacted version of McGinnis's statement to police.[2] *McGinnis II*, 2018 WL 3097169, at *1. Two witnesses testified that McGinnis chased the decedent from the car, pointed a gun at him, and told him to give back the "sh*t," before they wrestled and the gun went off. *McGinnis I*, 2016 WL 3659127, at *1. McGinnis also testified, giving a more fulsome account of the incident than he had in his statement to police. *Id*. at *2; *McGinnis II*, 2018 WL 3097169, at *3. In addition, he testified to his activities during the two hours between the shooting and his statement to police. *McGinnis II*, 2018 WL 3097169, at *3.

---

[2] The parties stipulated to redactions of part of McGinnis's statement to police, including his invocation of his right to remain silent. Statements that he made before invoking his right to silence were included in the redacted statement admitted into evidence. *McGinnis II*, 2018 WL 3097169, at *1.

3

During the prosecution's opening statement, case-in-chief, cross-examination of McGinnis, and closing arguments, the prosecutor referred to testimony McGinnis gave at trial that he had not disclosed in his statement to police, both asking McGinnis why he did not disclose it and arguing to the jury that McGinnis had an opportunity to tell his entire story to the police but did not. (*See* ECF No. 19 ("Tr. Excerpts").) The jury found McGinnis guilty of second-degree unintentional felony murder, third-degree unintentional murder, and third-degree witness tampering. *McGinnis I*, 2016 WL 3659127, at *2. McGinnis's convictions were affirmed on appeal. *Id.* at *1, *10.

### III.   Post-Conviction Petition – *McGinnis II*

McGinnis filed a *pro se* petition for postconviction relief with the state court, arguing ineffective assistance of trial and appellate counsel. *McGinnis II*, 2018 WL 3097169, at *1. The state court denied his petition. *Id.* at *2. McGinnis appealed the denial of his postconviction petition to the Minnesota Court of Appeals. *Id.* at *1.

In *McGinnis II*, the Court of Appeals focused on McGinnis's claims for ineffective assistance of appellate counsel, finding the remainder of his claims procedurally barred. *Id.* at *2. McGinnis argued that his appellate counsel failed to obtain his entire file from trial counsel. Had appellate counsel done so, counsel would have been able to make McGinnis's best argument—that the prosecutor at trial improperly used McGinnis's post-arrest silence in the state's case-in-chief, as substantive evidence of guilt, and to impeach McGinnis. *See id.*

4

The court determined that even assuming appellate counsel's performance was deficient, McGinnis was not entitled to relief because he "failed to show that the results of his appeal would have been different." *Id*. at *3. To come to this conclusion, the Court of Appeals analyzed the merits of the claim of improper use of McGinnis's post-arrest silence, an issue falling under *Doyle v. Ohio*, 426 U.S. 610 (1976), and *Anderson v. Charles*, 447 U.S. 404 (1980). *Id.* at *3–*4. In *Doyle*, the defendants made no post-arrest statements about their involvement in the crime. The prosecutor sought to impeach the defendants' exculpatory story, told for the first time at trial, by cross-examining them about their failure to tell the story after receiving *Miranda* warnings. 426 U.S. at 611. The Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id*. at 619.

The Court of Appeals contrasted the *Doyle* defendants with the defendant in *Anderson*, who answered police questions about where he stole a car after being given *Miranda* warnings. *McGinnis II*, 2018 WL 3097169, at *4 (citing *Anderson*, 447 U.S. at 404–05). At trial, the *Anderson* defendant testified that he stole the car from a different location, and the prosecutor cross-examined him about his post-arrest failure to tell the police the same story. 447 U.S. at 405–07. In connection with the defendant's petition for writ of habeas corpus, the Sixth Circuit divided the cross-examination into two parts— (1) recognizing that the defendant could be questioned about prior statements

5

inconsistent with his trial testimony, but (2) finding that questioning the defendant about his "failure to tell arresting officers the same story he told the jury" was unconstitutional. *Id*. at 408 (citation omitted). The Supreme Court reversed the Sixth Circuit, explaining:

> *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id*. at 408. The Supreme Court rejected the Sixth Circuit's bifurcation of the cross-examination, stating that "taken as a whole," the quoted colloquy did not refer to the defendant's exercise of his right to remain silent, but rather, asked the defendant why, if his trial testimony were true, he did not tell the officer that he stole the car from one location instead of telling him he took it from another. *Id*. at 408–09. The Supreme Court held that "[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Id*. at 409. "Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Id*.

The Minnesota Court of Appeals distinguished McGinnis's situation from the defendants in *Doyle*, explaining:

> unlike the two defendants in *Doyle*, who said nothing about the alleged drug sale after they were arrested and received *Miranda* warnings, McGinnis gave police a statement about the events surrounding the shooting. Then, at trial, McGinnis testified about events that occurred

6

> during the two hours between the shooting and his arrest that he had not described in his statement to police.
>
> At various times during McGinnis's trial, the prosecutor referred to McGinnis's failure to include these events in his statement to police. McGinnis argues that, when he failed to include the events in his statement to police, he was exercising his right to remain silent about the events, and the prosecutor's references were misconduct because they impermissibly used his post-arrest silence as substantive evidence of guilt and to impeach him.

*McGinnis II*, 2018 WL 3097169, at *3. The Court of Appeals concluded that

> like the cross-examination in *Anderson*, the prosecutor's references to McGinnis's failure to include certain events in his statement to police were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement. Thus, the prosecutor did not commit misconduct by referring to the omissions from McGinnis's statement to police, and McGinnis has failed to show that the result of his appeal would have been different if appellate counsel had obtained an unredacted copy of his statement to police and argued that the prosecutor improperly referred to McGinnis's post-arrest silence.

*Id*. at *4. The Minnesota Supreme Court denied McGinnis's petition for further review.[3]

(R&R at 14.)

## IV.     § 2254 Petition

McGinnis filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Nos. 1, 1-1.) As the R&R explains, McGinnis's petition seeks habeas relief on three grounds: (1) ineffective assistance of appellate counsel with respect to the prosecutor's use of McGinnis's post-arrest silence as substantive evidence and in the prosecutor's case-

---

[3] McGinnis filed a second petition for postconviction relief, which was also denied. (R&R at 14–15.) He did not appeal that denial. (*Id*.)

7

in-chief; (2) ineffective assistance of appellate counsel with respect to the prosecutor's use of McGinnis's post-arrest silence as impeachment; and (3) ineffective assistance of trial counsel for agreeing with the prosecutor to enter into an unconstitutionally obtained apparent confession in the record. (R&R at 15 (citing (ECF No. 1-1).) The first two grounds claim the same deficiencies by appellate counsel on appeal: (a) failure to raise that the prosecutor improperly referred to McGinnis's post-arrest silence; and (b) failure to raise ineffective assistance of trial counsel for not objecting to the prosecutor's references to McGinnis's post-arrest silence. (*Id.*)

The R&R reviewed McGinnis's petition and determined that grounds 1(b), 2(b), and 3 are not properly exhausted and are procedurally defaulted. (R&R at 16–24.) Because no party objects to these conclusions, the Court has reviewed them for clear error. *See* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Finding no clear error, the Court accepts the conclusions as to McGinnis's grounds 1(b), 2(b), and 3.

The R&R then considered McGinnis's properly-exhausted claims of ineffective assistance of appellate counsel (grounds 1(a) and 2(a)), describing them as based on appellate counsel's "fail[ure] to obtain the redacted and unredacted version of [McGinnis's] statement" to police (*i.e.,* the "entire file") and failure "to raise on direct appeal the prosecutor's use of [McGinnis's] statement and references to his post-arrest silence at trial." (R&R at 25.) The R&R concludes that the Minnesota Court of Appeals'

8

decision was neither contrary to nor involved an unreasonable application of clearly established federal law, § 2254(d)(1), and was not based on an unreasonable determination of the facts, § 2254(d)(2). (*Id*. at 30–40.) McGinnis objects to those findings and conclusions.

## ANALYSIS

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (citation and quotation marks omitted); *see Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that the Antiterrorism and Effective Death Penalty Act ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (citations and quotation marks omitted)). To that end, a federal court "cannot grant relief under AEDPA by conducting [its] own independent inquiry into whether the state court was correct as a *de novo* matter." *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). Rather, "a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citing 28 U.S.C. § 2254(d)).

A petitioner may prevail under § 2254(d) by showing that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an

9

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). McGinnis argues that the Court of Appeals' decision rejecting his ineffective assistance of appellate counsel claims was contrary to clearly established federal law and was based on an unreasonable application of law and an unreasonable determination of facts. (Pet'r's Obj. at 4–12; *see* R&R at 31–39.)

Where a § 2254(d) petitioner asserts an ineffective assistance of counsel claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101 (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, a petitioner must show that (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense to establish a constitutional violation based on ineffective assistance of counsel. *Barnes v. Hammer*, 765 F.3d 810, 813–14 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 687). Both *Strickland* and § 2254(d) employ a "highly deferential" standard. *Richter*, 562 U.S. at 105. When *Strickland* and § 2254(d) apply in tandem, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

10

"Unreasonable" does not mean that the state court decision is merely incorrect; rather, the petitioner must show it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see Stephen v. Smith*, 963 F.3d 795, 799 (8th Cir. 2020) (noting a state court's decision is reasonable "'so long as fairminded jurists could disagree' on the correctness of the . . . decision" (quoting *Richter*, 562 U.S. at 100)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

Like the R&R and Minnesota Court of Appeals, this Court assumes that appellate counsel's performance was deficient by failing to obtain the entire file and failing to challenge on direct appeal the prosecutor's use of McGinnis's post-arrest silence at trial. (R&R at 27); *see McGinnis II*, 2018 WL 3097169, at *3. Thus, the Court focuses on whether McGinnis was prejudiced by appellate counsel's failure to raise these issues. In assessing prejudice, the Court of Appeals considered the merits of McGinnis's claim that the prosecutor's conduct violated *Doyle*. *See McGinnis II*, 2018 WL 3097169, at *3–*4 (analyzing *Doyle*, 426 U.S. 610, and *Anderson*, 447 U.S. 404). As recounted above, the Court of Appeals determined that it did not, and that McGinnis "failed to show that the result of his appeal would have been different if appellate counsel had obtained an unredacted copy of his statement to police and argued that the prosecutor improperly referred to McGinnis's post-arrest silence." *Id*. at *4.

11

McGinnis provides this Court with excerpts of the trial transcript that raise concerns about the prosecutor's references to his post-arrest silence. (*See* Tr. Excerpts; ECF No. 27-1.) For example, the transcript excerpts contain instances of the prosecutor referring to McGinnis's post-arrest silence during cross-examination and closing argument. (*E.g.*, Tr. Excerpts at 1503 ("[T]he story you told on March 13th was not the whole story, right?"); *id.* at 1504–05 (including several questions of McGinnis that he "could have told" officers certain things but did not); *id.* at 1552 (in closing, arguing, "You got zero of that back on March 13th when the defendant had every opportunity to tell his version of events."); *id.* at 1558 ("Not a single word . . . Word zero."); *id.* at 1559 ("[W]ouldn't you tell the police . . . .?").) With only transcript excerpts, the Court lacks the context necessary to analyze the reasonableness of the Court of Appeals' determination that no *Doyle* violations occurred and that McGinnis "failed to show that the result of his appeal would have been different." *McGinnis II*, 2018 WL 3097169, at *4. A fair and complete review under the § 2254(d) standard requires a review of McGinnis's entire trial, in order to determine the extent and context of the prosecutor's statements and for further analysis under *Doyle* and *Anderson*. *E.g.*, *Anderson*, 447 U.S. at 408 (considering the prosecutor's quoted colloquy "as a whole" in determining that it did not refer to the defendant's exercise of his right to remain silent). If *Doyle* violations occurred, the court must also analyze "in light of the record as a whole" whether the violation "had a 'substantial and injurious effect' on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638

(1993) (citation omitted, stating that a *Doyle* violation is considered a trial error, and the court must analyze the events at trial to determine if a violation occurred); *see Ervin v. Bowersox*, 892 F.3d 979, 984 (8th Cir. 2018) (citing *Brecht*, 507 U.S. at 637–38, and *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, . . . whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard . . . .")).

In his motion to expand the record, McGinnis requests that the Court be provided with the full transcripts of his trial. (ECF No. 17.) Judge Leung recommends denying that request. (R&R at 32–34.) For the reasons above, the Court concludes that the entire trial transcript is necessary to determine whether the Court of Appeals' holding as to prejudice was unreasonable and thus sustains McGinnis's objection to this recommendation. (Pet'r's Obj. at 12.) The Respondent indicates that the trial transcripts are available upon request. (ECF No. 5 at 2.) The Court orders the Respondent to submit the trial transcripts to the Court and remands the case to Judge Leung for consideration of the questions presented here after review of the entire record.

Finally, no party objects to the R&R's recommendation that McGinnis's request for an evidentiary hearing be denied. The Court therefore reviews it for clear error. *See* Fed. R. Civ. P. 72(b); *Grinder*, 73 F.3d at 795. Finding no clear error, the Court denies the request

for an evidentiary hearing. To the extent Judge Leung determines that an evidentiary hearing is necessary after reviewing the trial transcript, he may order such a hearing.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation (ECF No. 21) is ACCEPTED IN PART as consistent with this opinion;

2. The Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is REMANDED for consideration of the questions presented in this opinion after a review of the entire record;

3. McGinnis's Request for an Evidentiary Hearing with His Suggestions in Support (ECF No. 12) is DENIED;

4. McGinnis's Motion to Expand the Record Under Rule 7 of the Rules Governing § 2254 Cases (ECF No. 17) is GRANTED;

5. McGinnis's Motion to Introduce Trial Transcripts into the District Court's Record (ECF No. 18) is GRANTED;

6. McGinnis's Motion to Strike (ECF No. 30) is DENIED; and

7. The Respondent is ORDERED to provide the full transcripts of McGinnis's jury trial to the Court.

Dated: September 28, 2020                    BY THE COURT:

s/Nancy E. Brasel  
Nancy E. Brasel  
United States District Judge